T.C. Memo. 1996-271


UNITED STATES TAX COURT


ROBERT D. SPARROW, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

N. LARAE SPARROW, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 7127-94, 7128-94.          Filed June 12, 1996.


Robert D. Sparrow and N. LaRae Sparrow, prosese.

<u>Fred E. Green, Jr.</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

LARO, <u>Judge</u>:  Robert D. Sparrow (Mr. Sparrow) and N. LaRae Sparrow (Mrs. Sparrow) separately petitioned the Court to redetermine respondent's determinations with respect to their 1986, 1987, and 1988 Federal income taxes.  Respondent made a separate determination for Mr. Sparrow and a separate

determination for Mrs. Sparrow, and respondent reflected each of these determinations in separate notices of deficiency. Respondent determined the following deficiencies in, and additions to, petitioners' taxes:

Robert D. Sparrow, docket No. 7127-94

| | | Additions to Tax | | |
| | | Sec. | Sec. | Sec. |
| Year | Deficiency | 6653(b)(1) | 6653(b)(1)(A) | 6661 |
| 1986 | $12,742 | --- | $9,557 | $3,186 |
| 1987 | 71,509 | --- | 53,632 | 17,877 |
| 1988 | 49,835 | $37,376 | --- | 12,459 |

N. LaRae Sparrow, docket No. 7128-94

| | | Additions to Tax | |
| | | Sec. | Sec. |
| Year | Deficiency | 6651(a)(1) | 6661 |
| 1986 | $12,742 | $3,186 | $3,186 |
| 1987 | 71,742 | --- | 17,877 |
| 1988 | 49,835 | 12,459 | 12,459 |

Respondent also determined that Mr. Sparrow was liable for the addition to tax under section 6653(b)(1)(B) on the entire deficiency for 1986 and 1987, and that petitioners were liable for increased interest under section 6621(c) on the entire deficiency in each year.

Following a consolidation of the cases, we must decide:

1.  Whether petitioners underreported their gross income for 1986, 1987, and 1988, by failing to report proceeds from the sales of stock.  We hold they did.

2.  Whether petitioners failed to report $10,000 in consulting fees received by Mr. Sparrow in 1986, and, if they

did, whether this amount is subject to self-employment tax. We hold they did, and it is.

3. Whether petitioners are liable for the additions to tax for substantial understatements determined by respondent under section 6661. We hold they are.

4. Whether Mrs. Sparrow is liable for the additions to her 1986 and 1988 taxes for delinquency determined by respondent under section 6651(a)(1). We hold she is.

5. Whether Mr. Sparrow is liable for the additions to tax for fraud determined by respondent under section 6653(b). We hold he is not.

6. Whether petitioners are liable for the increased rate of interest determined by respondent under section 6621(c) for substantial underpayments attributable to tax motivated transactions. We hold they are not.

Unless otherwise stated, section references are to the Internal Revenue Code in effect for the taxable years in issue. Rule references are to the Tax Court Rules of Practice and Procedure. Dollar amounts are rounded to the nearest dollar.

## FINDINGS OF FACT[1]

Petitioners resided in St. George, Utah, when they petitioned the Court. They filed a 1986 Form 1040, U.S.

---

[1] Some of the facts have been stipulated and are so found. The stipulations and attached exhibits are incorporated herein by this reference.

Individual Income Tax Return, on October 1988, using the status of "Married filing joint return". They filed a 1987 Form 1040 on April 15, 1988, using the status of "Married filing joint return". They filed a 1988 Form 1040, on October 17, 1990, using the status of "Married filing joint return". They did not receive an extension of time to file any of these returns.

During 1986, Mr. Sparrow owned at least 1.5 million shares of NRG Intl., Inc. (NRG), and Mrs. Sparrow owned at least 150,000 shares of NRG.

During 1986, petitioners sold to the husband of Dorothy S. Hall, 10,000 shares of NRG for $2,000. Mr. Sparrow received a $2,000 check from Mrs. Hall, dated February 22, 1986, which was payable to "Bob Sparrow". Petitioners did not include this $2,000 in their 1986 gross income.

On July 10, 1986, Mr. Sparrow sold to Norman C. Hall, 10,000 shares of NRG for $500. Petitioners received a $500 check from Mr. Hall, dated July 10, 1986, which was made payable to "Bob Sparrow". The $500 was gain from the sale of stock. Petitioners did not include this $500 in their 1986 gross income.

During 1986, Mr. Sparrow sold to Stanley L. Evans some shares of NRG for $11,800. Mr. Sparrow received a $11,800 check from Mr. Evans, dated July 21, 1986, which was payable to "Bob Sparrow". Petitioners did not include this $11,800 in their 1986 gross income.

During 1986, Mr. Sparrow maintained a stock account at Anderson Bryant & Co. (Anderson Bryant).  Mr. Sparrow received a $9,998 check from Anderson Bryant, dated August 1, 1986, which was payable to "Robert D. Sparrow".  Petitioners did not include this $9,998 in their 1986 gross income.

During 1986, the brokerage firm of Wilson-Davis & Co. (Wilson-Davis), purchased and sold stock for petitioners.  On August 12, 1986, Wilson-Davis sold 40,000 shares of NRG on behalf of petitioners for $11,284, and purchased 1,300 shares of Centurion stock on behalf of Mr. Sparrow for $985.  The cost of the purchase was deducted from the proceeds from the sale, and Mr. Sparrow received a $10,299 check from Wilson-Davis, dated August 19, 1986.  Petitioners did not include the $11,284 in their 1986 gross income.

On August 25, 1986, Wilson-Davis sold 40,000 shares of NRG on behalf of Mr. Sparrow for $7,020.  On August 26, 1986, Mr. Sparrow purchased 1,000 shares of Centurion for $665, which amount was deducted from the proceeds of the prior day's sale. Mr. Sparrow received a $6,354 check from Wilson-Davis dated August 29, 1986.  Petitioners did not include this $7,020 in their 1986 gross income.

On September 18, 1986, Wilson-Davis sold 10,000 shares of National Division stock on behalf of Mr. Sparrow for $557. Mr. Sparrow received a $557 check from Wilson-Davis dated

September 25, 1986.  Petitioners did not include this $557 in their 1986 gross income.

On October 10, 1986, Wilson-Davis sold 30,000 shares of NRG on behalf of Mr. Sparrow for $4,205.  On October 13, 1986, Wilson-Davis sold 20,000 shares of NRG on behalf of Mr. Sparrow for $3,496.  Mr. Sparrow received a $7,701 check from Wilson-Davis dated October 20, 1986.  Petitioners did not include this $7,701 in their 1986 gross income.

On October 21, 1986, Wilson-Davis sold 20,000 shares of NRG on behalf of Mr. Sparrow for $2,788.  Mr. Sparrow received a $2,788 check from Wilson-Davis dated October 28, 1986. Petitioners did not include this $2,788 in their 1986 gross income.

On October 14, 1986, Wilson-Davis sold 30,000 shares of NRG on behalf of Mr. Sparrow for $4,205.  Mr. Sparrow received a $4,205 check from Wilson-Davis dated October 29, 1986. Petitioners did not include this $4,205 in their 1986 gross income.

On November 3, 1986, Wilson-Davis sold 20,000 shares of NRG on behalf of Mr. Sparrow for $3,496.  Mr. Sparrow received a $3,496 check from Wilson-Davis dated November 11, 1986. Petitioners did not include this $3,496 in their 1986 gross income.

On November 6, 1986, Wilson-Davis sold 20,000 shares of NRG on behalf of Mr. Sparrow for $3,496.  Mr. Sparrow received a

$3,496 check from Wilson-Davis dated November 13, 1986. Petitioners did not include this $3,496 in their 1986 gross income.

On November 12, 1986, Wilson-Davis sold 5,000 shares of NRG on behalf of Mr. Sparrow for $841. Mr. Sparrow received an $841 check from Wilson-Davis dated November 20, 1986. Petitioners did not include this $841 in their 1986 gross income.

On November 17, 1986, Wilson-Davis sold 20,000 shares of NRG on behalf of Mr. Sparrow for $4,990. Petitioners did not include this $4,990 in their 1986 gross income.

On November 21, 1986, Wilson-Davis sold 20,000 shares of NRG on behalf of Mr. Sparrow for $7,490. Petitioners did not include this $7,490 in their 1986 gross income.

On November 24, 1986, Mr. Sparrow received a $10,000 check made payable to him, from H. T. Shepherd. The $10,000 was paid to Mr. Sparrow for consulting services. Petitioners did not include this $10,000 in their 1986 gross income.

During 1987, Mr. Sparrow sold securities to individuals, and he engaged Wilson-Davis to purchase and sell securities on his behalf. On August 24, 1987, Wilson-Davis sold 12,000 shares of NRG on behalf of Mr. Sparrow for $1,994. Mr. Sparrow received a $1,994 check from Wilson-Davis dated August 31, 1987. Petitioners did not include this $1,994 in their 1987 gross income.

On October 1, 1987, Wilson-Davis sold 50,000 shares of NRG on behalf of Mr. Sparrow for $6,490. Mr. Sparrow received a $6,490 check from Wilson-Davis dated October 8, 1987. Petitioners did not include this $6,490 in their 1987 gross income.

On October 7, 1987, Wilson-Davis sold 50,000 shares of NRG on behalf of Mr. Sparrow for $5,990. Mr. Sparrow received a $5,990 check from Wilson-Davis dated October 19, 1987. Petitioners did not include this $5,990 in their 1987 gross income.

On November 16, 1987, Wilson-Davis sold 4,500 shares of NRG on behalf of Mr. Sparrow for $181. Mr. Sparrow received a $181 check from Wilson-Davis dated November 23, 1987. Petitioners did not include this $181 in their 1987 gross income.

On December 16, 1987, Wilson-Davis sold 10,000 shares of Noble Corp., Inc. (Noble), on behalf of Mr. Sparrow for $370. On December 16, 1987, Wilson-Davis sold another 9,000 shares of Noble on behalf of Mr. Sparrow for $350. Mr. Sparrow received a $720 check from Wilson-Davis dated December 24, 1987. Petitioners did not include this $720 in their 1987 gross income.

On December 23, 1987, Wilson-Davis sold 10,000 shares of Noble on behalf of Mr. Sparrow for $790. Petitioners did not include this $790 in their 1987 gross income.

On June 15, 1987, Mr. Sparrow entered into a written agreement with Greg Slazis (Mr. Slaziz) to "trade $230,346.00

worth of appraised gems for 767,820 shares of NRG International Stock at .30/share."  Pursuant to this agreement, Mr. Sparrow and Mr. Slaziz exchanged 767,820 shares of NRG for gems valued by Mr. Slazis at $230,346.  Petitioners did not include this $230,346 in their 1987 gross income.

During 1987, Mr. Sparrow transferred to Leroy J. Isaac, Jr. 2,500 shares of Noble.

During 1987, Michael Allred (Mr. Allred) sold NRG on behalf of petitioners.  Mr. Sparrow received a $1,750 check from Mr. Allred, dated March 17, 1987, and payable to Mr. Sparrow. Mr. Sparrow received a $200 check from Mr. Allred, dated March 27, 1987, and payable to Mr. Sparrow.  Mr. Sparrow received a $2,500 check from Mr. Allred, dated April 6, 1987, and payable to Mr. Sparrow.  Mr. Sparrow received a $1,500 check from Mr. Allred, dated April 22, 1987, and payable to Mr. Sparrow. Petitioners did not include the $5,950 of aggregate proceeds from Mr. Allred in their 1987 gross income.

Petitioners maintained control over Noble's bank account during 1987.  During 1987, Mr. Sparrow sold to Gordon LaMont shares of Noble for $900.  Mr. Sparrow received a $900 check for this sale.

Petitioners engaged the brokerage firm of Piper, Jaffray & Hopwood, Inc. (Piper, Jaffray) to sell stock on their behalf during 1987.  On January 6, 1987, Piper, Jaffray sold 1,300 shares of Centurion Mines Corp. on behalf of petitioners for

$366. Petitioners received a $366 check from Piper, Jaffray, dated January 7, 1987.

Petitioners also engaged the brokerage firm of Wilson-Davis to purchase and sell stock on their behalf during 1987. On September 2, 1987, Wilson-Davis sold 9,000 shares of NRG on behalf of Mrs. Sparrow for $1,484. Petitioners received a $1,484 check from Wilson-Davis dated September 8, 1987. The $1,484 check was petitioners' proceeds and gain from the sale of NRG, and it should have been included in determining their 1987 gross income. Petitioners failed to include this $1,484 in their 1987 gross income.

On September 21, 1987, Wilson-Davis sold 30,000 shares of NRG on behalf of Mrs. Sparrow for $5,267. Petitioners received a $5,267 check from Wilson-Davis dated September 28, 1987. The $5,267 check was petitioners' proceeds and gain from the sale of NRG, and it should have been included in their 1987 gross income. Petitioners failed to include this $5,267 in their 1987 gross income.

On November 16, 1987, Wilson-Davis sold 22,800 shares of NRG on behalf of Mrs. Sparrow for $959. Petitioners received a $959 check from Wilson-Davis dated November 23, 1987. The $959 check was petitioners' proceeds and gain from the sale of NRG, and it should have been included in their 1987 gross income. Petitioners failed to include this $959 in their 1987 gross income.

On November 23, 1987, Wilson-Davis sold 50,000 shares of NRG on behalf of Mrs. Sparrow for $1,843. Petitioners received a $1,843 check from Wilson-Davis dated December 1, 1987. The $1,843 check was petitioners' proceeds and gain from the sale of NRG, and it should have been included in their 1987 gross income. Petitioners failed to include this $1,843 in their 1987 gross income.

During taxable year 1988, Mr. Sparrow continued to sell stocks and securities. On May 26, 1988, Mr. Sparrow entered into a second written agreement with Mr. Slaziz to "exchange appraised gemstones for [500,000 shares of Noble worth $125,000 and 660,823 shares of NRG worth $33,041]." Pursuant to this second agreement, Mr. Sparrow and Mr. Slaziz exchanged the 1,160,823 shares of the above mentioned stock for gems valued at $158,154 by Mr. Slazis' appraisal.

During 1988, Mr. Sparrow maintained a stock account at Securities Settlement Corp. (Securities). On December 19, 1988, Securities sold 403 shares of General Electric Company on behalf of Mr. Sparrow for $18,257.

OPINION

Except with respect to respondent's allegation of fraud, the burden of proof is on petitioners to prove that respondent's determinations set forth in the notices of deficiency are wrong. Rule 142(a) and (b); Welch v. Helvering, 290 U.S. 111, 115 (1933). Respondent must prove by clear and convincing evidence

that Mr. Sparrow is liable for the additions to tax for fraud. Sec. 7454(a); Rule 142(b). With these basic principles in mind, we turn to the issues for decision.

## 1. Proceeds from Sales of Stock

Gross income includes all income from whatever source derived, including gains derived from dealings in property. Sec. 61(a)(3). Respondent determined that petitioners failed to report capital gains of $31,467, $268,968, and $177,181 for 1986, 1987, and 1988, respectively.[2] Petitioners did not present any persuasive evidence at trial to disprove this determination. In addition, petitioners did not squarely address this issue in their brief. The thrust of petitioners' position on brief is that they have enough net operating losses (NOLs) to offset any tax that is payable on their unreported income.[3] We are unconvinced that this is true. Petitioners must prove their right to deduct an NOL in any of the subject years. United States v. Olympic Radio & Television, Inc., 349 U.S. 232, 235 (1955). Petitioners must also prove the amount (if any) of an NOL. Jones v. Commissioner, 25 T.C. 1100, 1104 (1956), revd.

---

[2] For 1986, respondent determined that petitioners realized $84,804 of long-term capital gains in 1986, rather than the $10,127 that they reported on their 1986 Form 1040.

[3] Section 172 allows a taxpayer to deduct an NOL for a taxable year. The amount of the NOL deduction equals the sum of the NOL carryovers plus NOL carrybacks to that year. Sec. 172(a). Absent an election to the contrary, an NOL for any taxable year must first be carried back 3 years and then forward 15 years. Sec. 172(b)(1)(A), (2), and (3).

and remanded on other grounds 259 F.2d 300 (5th Cir. 1958);
Vaughan v. Commissioner, 15 B.T.A. 596 (1929). Petitioners have
failed to meet either of these burdens. We sustain respondent's
determination on this issue.

## 2. Service Income/Self-Employment Tax

Respondent determined that petitioners failed to report
$10,000 of personal service income for 1986. Respondent also
determined that this amount was subject to self-employment tax.
A self-employment tax is imposed on income in excess of $400
derived by an individual from a trade or business. Secs. 1401,
1402(b) and (c).

Petitioners presented no evidence on these issues, and the
record does not otherwise disprove respondent's determination on
the issues. We sustain respondent's determination.

## 3. Substantial Understatements--Section 6661

Section 6661 imposes an addition to tax for substantial
understatements. The amount of the section 6661 addition to tax
for additions assessed after October 21, 1986, equals 25 percent
of the amount attributable to the substantial understatement.
Pallottini v. Commissioner, 90 T.C. 498, 500-503 (1988). An
understatement is substantial if it exceeds the greater of
10 percent of the tax required to be shown on the return or
$5,000. Sec. 6661(b)(1)(A). An understatement is reduced to the
extent it is: (1) Based on substantial authority, or (2)

adequately disclosed in the return or in a statement attached to the return.  Sec. 6661(b)(2).

Petitioners have failed to meet their burden of proof on this issue.  The record does not disprove respondent's determination that the understatements are substantial, and it does not establish that any of the understatements are reduced under section 6661(b)(2).  We sustain respondent's determination.

4.  Delinquency--Section 6651(a)(1)

Respondent determined an addition to tax under section 6651(a)(1) for Mrs. Sparrow's 1986 and 1988 taxable years, asserting that she failed to file timely Federal income tax returns.  In order to avoid this addition to tax, Mrs. Sparrow must prove that her failure to file was:  (1) Due to reasonable cause and (2) not due to willful neglect.  Sec. 6651(a); Rule 142(a); United States v. Boyle, 469 U.S. 241, 245 (1985); Catalano v. Commissioner, 81 T.C. 8 (1983).  A failure to file timely is due to reasonable cause if the taxpayer exercised ordinary business care and prudence, and, nevertheless, was unable to file the return within the prescribed time.  Sec. 301.6651-1(c)(1), Proced. & Admin. Regs.  Willful neglect means a conscious, intentional failure or reckless indifference. United States v. Boyle, supra at 245.

Petitioners filed their 1986 and 1988 Forms 1040 on October 12, 1988, and October 17, 1990, respectively, and they did so without the benefit of any extensions to the statutory

filing period.  We conclude that these returns were filed untimely.  Because Mrs. Sparrow has also failed to prove that either of these untimely filings was due to reasonable cause and not due to willful neglect, we sustain respondent's determination.

## 5.  Fraud--Section 6653(b)

Respondent must meet her burden of proving fraud through affirmative evidence; fraud is never imputed or presumed. Beaver v. Commissioner, 55 T.C. 85, 92 (1970).  Whether fraud exists in a given situation is a factual determination that must be made after reviewing the particular facts and circumstances of the case.  DiLeo v. Commissioner, 96 T.C. 858, 874 (1991), affd. 959 F.2d 16 (2d Cir. 1992).  Respondent must show clearly that petitioner intended to evade a tax known or believed to be owing. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968).

Based on our review of the record, we are not convinced that Mr. Sparrow is liable for fraud for any of the years in issue.[4] We so hold.

## 6.  Increased Rate of Interest--Section 6621(c)

Section 6621(c) applies if there is a substantial underpayment attributable to tax-motivated transactions.  The term "tax motivated transaction" connotes a sham or fraudulent

---

[4] We find little to no value in the testimony of the two witnesses that respondent called at trial to support her determination.

transaction. <u>Skeen v. Commissioner</u>, 864 F.2d 93 (9th Cir. 1989); sec. 6621(c)(3)(A)(v). When section 6621(c) applies, the annual rate of interest payable on the tax-motivated substantial underpayment is increased to 120 percent of the underpayment rate under section 6621(b).

We find that petitioners' underpayments were not attributable to tax-motivated transactions. We hold the same.

\*           \*           \*           \*           \*           \*           \*

We have considered all arguments made by the parties and, to the extent not discussed above, find them to be without merit. To reflect the foregoing,

> <u>Decisions will be entered</u>
> <u>for respondent for the</u>
> <u>deficiencies, the additions to</u>
> <u>tax under sec. 6661, and, with</u>
> <u>respect to N. LaRae Sparrow,</u>
> <u>the additions to tax under</u>
> <u>sec. 6651(a)(1), and for</u>
> <u>petitioners for the increased</u>
> <u>interest under sec. 6621(c),</u>
> <u>and, with respect to Robert D.</u>
> <u>Sparrow, the additions to tax</u>
> <u>under sec. 6653(b)</u>.